## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**CHRISTOPHER MADDOX MOSSBURG,**</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Civil Action No. RWT-15-1633</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**THE STATE OF MARYLAND,**</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendant.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

## MEMORANDUM OPINION

Plaintiff Christopher Mossburg ("Mossburg") claims the State of Maryland violated Title II of the Americans with Disabilities Act ("ADA") by failing to provide him with a reader in two separate but related legal proceedings, one criminal and one civil.  Mossburg proceeded *pro se* in both cases, as he does now in this case.  The State filed a motion to dismiss, or in the alternative, motion for summary judgment.  After reviewing the filings, and the transcripts, the Court determines that no hearing is necessary.  Local Rule 105.6.  Because the transcripts reveal that Mossburg was able to participate in both legal proceedings and Mossburg has pled no facts to contradict the transcripts, the State's motion to dismiss shall be granted.

## BACKGROUND FACTS

Mossburg alleges that he suffers from learning disabilities that impact his ability to read and write.  ECF No. 22, at 2; ECF No. 30-5.  This case arises first out of a criminal case in the Circuit Court of Maryland for Anne Arundel County, where Mossburg pled guilty to possession of marijuana.  ECF Nos. 25-2 through 25-6.  The second is a civil case in the District Court of

Maryland for Montgomery County, which was dismissed for failure to state a cause of action. ECF No. 25-7.

On December 22, 2011, four days after he was arrested for traffic violations and possession of marijuana, Mossburg visited the Office of the Public Defender ("OPD") to determine if he wanted to be represented by a public defender or private counsel.  ECF No. 22, at 1.  Mossburg requested that the OPD record the conversation because of his disability, and the public defender obliged him.  *Id.* at 2.  Mossburg told the public defender he did not want the OPD to enter its appearance until he consented.  *Id.*  The OPD asked him to sign a form Mossburg alleges he could not read accurately.  *Id.*  On December 26, 2011, Mossburg alleges the OPD entered their appearance on his behalf in the criminal proceedings.  *Id.*  Mossburg further alleges that he was not able to talk to private attorneys because his case file showed he was represented by the OPD.  *Id.* at 2.

On May 8, 2012, Judge Nancy D. Loomis signed an order approving Mossburg's formal request for ADA accommodation for his disability.  ECF No. 25-10, at 13.  The following day, at a status conference, a public defender showed up to represent Mossburg.  ECF No. 25-2, at 2. Judge Michele D. Jaklitsch listened to the recording of the December 22 conversation, and ordered the public defender's appearance stricken from the file.  *Id.* at 6.  Mossburg told the court he wanted time to decide if he wanted representation.  *Id.*  Judge Jaklitsch told him he had until the trial set for July 11, 2012 to decide if he wanted representation.  *Id.*

Despite the order to strike the appearance from his file, the public defender still appeared on the case file.  It appeared even after Judge William C. Mulford, II reissued a similar order at a

status hearing on July 27, 2012.[1]  ECF No. 25-3, at 5-6.  Mossburg called Charles Dorsey, the person the court administrator told him could fix the issue, to try to remove the public defender from his case file.  ECF No. 22, at 6.  Dorsey allegedly told Mossburg he should not have signed a document he could not read entirely, because "that's not what normal people do," and hung up. *Id.*

More than a month after the status hearing, on September 4, 2012, the court granted Mossburg's motion to postpone because of his inability to retain counsel due to the appearance of the public defender on his file.  ECF No. 25-8.  The court postponed the trial to October 10, 2012.  *Id.*  At the pre-trial hearing on October 10, the court noted the public defender still appeared on the file.  ECF No. 22, at 7.

At the July 27 status hearing, Judge Mulford asked Mossburg if he wanted representation or if he wanted to represent himself.  ECF No. 25-3, at 5-6.  Mossburg protested to the judge that his insistence on a yes or no answer regarding his desire to represent himself or seek counsel was a "fastball."  *Id.* at 9.  Judge Mulford said the case had already gone on much longer than an ordinary case involving the same charges, and said, "[T]his case is [not] going on a fastball track, you're not even at t-ball league at this point in time, we're still so far behind.  You're sitting in toddler stage where right now daddy is over the crib saying, 'Goo-goo, ga-ga.'"  *Id.*  Judge Mulford told Mossburg he could speak to the prosecutor, and told the prosecutor to explain Mossburg's charges.  *Id.* at 9.  Mossburg alleges the prosecutor refused to speak to him about the case.  ECF No. 22, at 5.

---

[1] At the July 27 status hearing, the court noted that the public defender was still "on the jacket" despite the order on May 9 that the appearance be stricken.  ECF No. 25-3, at 6-8.  Judge Mulford, asked Mossburg if he wanted to represent himself.  *Id.*  Mossburg answered, "At present, . . . yes."  *Id.*  Judge Mulford asked for an unqualified answer to the same question and enumerated all the benefits of having a lawyer represent him.  ECF No. 25-3, at 5-6.  Mossburg said he wanted to represent himself.  *Id.* at 6.

On August 9, 2012, Douglas M. Hofstedt, court administrator, emailed Mossburg to explain the court was not required to provide him with a reader to help him with research, but assured him he would have a reader at court appearances to read to him any written material referred to during the proceedings.  *Id.* at 6; ECF No. 22-5, at 2 ("If there is any written material that will be referred to at trial, a member of the Court staff will read it out loud for you, if you request.").

On October 10, the day of the trial, Mossburg requested a third postponement because the witnesses he subpoenaed were not present.  ECF No. 22, at 9.  Judge Mulford, the postponement judge for that day, denied his request.  ECF No. 25-5.  Mossburg argued that the absence of Dr. Michael April, his subpoenaed witness, merited postponement of the trial.  *Id.* at 6.  He tried to explain the recent law allowing for an affirmative defense for possession of marijuana if the defendant was using the marijuana to treat a debilitating medical condition.[2]  *Id.*; *see* Md. Code. Ann., Criminal Law § 5-601(c)(3).  Mossburg held up a printed Maryland Annotated Code and said, "I have the book. I can't read it very well, but I can show it to you." ECF No. 25-5, at 6.  Mossburg attempted to explain the relevant law.  *Id.*  Judge Mulford stated the law seemed only to apply to possible punishment if and when a defendant is found guilty.[3]  *Id.* at 7.  Judge Mulford, believing the presence of Dr. April would only be relevant at the sentencing hearing, denied the postponement request.  *Id.* at 9.

No reader was present at the pre-trial hearing later that same day.  *Id.* at 7. Judge Laura S. Kiessling asked Mossburg if his disability had any impact on his ability to

---

[2] Mossburg had been seeing Dr. Michael April, a pain management specialist, for ten years for treatment of chronic back pain.  *See* ECF No. 25-7.  The same day as the postponement hearing, at the pre-trial hearing, Mossburg informed the court that he was on Hydrocodone, prescribed to him for his back pain, but said it did not impact his ability to understand the proceedings.  ECF No. 25-4, at 16.
[3] The Court makes no determination as to the accuracy of this interpretation.  Section 5-601(c)(3) states that evidence of a medical need for marijuana should be considered as a mitigating factor, and it provides an affirmative defense if the marijuana was used for treating a debilitating medical issue.

4

understand that day's proceedings.  ECF No. 25-4, at 6-7.  Mossburg replied, "Not at all."  *Id.*

Mossburg accepted a plea agreement that dropped the traffic charges.  *Id.*  At sentencing on

November 27, 2012, the court sentenced Mossburg to probation before judgment without any

supervised probation, only requiring him to pay court costs.  ECF 25-6, at 12.

Mossburg subsequently filed a civil suit against Dr. April in the District Court of

Maryland for Montgomery County.[4]  ECF No. 22, at 9.  At the pre-trial hearing on July 24, 2013,

Judge Audrey Creighton recognized Mossburg's ADA request for a reader had been granted, and

attempted to obtain a reader for him.  ECF No. 23-6, at 5.  While a reader was being located, the

court discovered that Mossburg had not properly served his witness and that he sought a

postponement.  *Id.* at 6–7.  The court then inquired as to Mossburg's cause of action, eventually

finding, after substantial discussion, that there was no cause of action.  *Id.* at 57–58, 75–76.

During the discussion, Mossburg remarked that "I'm getting asked a lot of questions, I'd love to

be reading you know what I have to you but the readers are not here—."  *Id.* at 12.  Eventually

the court recessed to determine when a reader would arrive.  *Id.* at 33.  When court resumed,

Judge Creighton reported that a reader could arrive "in about an hour and a half."  *Id.*  Judge

Creighton continued to discuss Mossburg's potential causes of action with him, and Dr. April's

counsel and Judge Creighton reviewed Mossburg's Complaint and read from it.  *See, e.g.*, *id.*

at 40.   After much discussion, Dr. April agreed to redact the objectionable material in

Mossburg's record, provide his records to him, and reimburse him for ten dollars he spent on

faxes.  *Id.* at 55–56, 75.  Judge Creighton granted the motion to dismiss.  *Id.* at 75.

---

[4] The Complaint is difficult to parse, but based on the pre-trial hearing, the allegations appear to involve statements or documentation from Dr. April's office to a new pain management doctor.  ECF No. 23-6, at 72–73.  Again, however, the Court makes no determination as to the decision to dismiss the Complaint.  *See* ECF No. 25-7.

## PROCEDURAL HISTORY

Mossburg filed a complaint in this Court on June 3, 2015, claiming the State violated Title II of the ADA, and asking this Court to grant $1.3 million in damages.  ECF No. 1.  The State filed a motion to dismiss for failure to state a claim, or in the alternative, motion for summary judgment, on August 11, 2015.  ECF No. 8.  After reviewing the motion, the Court directed the State to file copies of the transcripts for all proceedings at issue, ECF No. 19, which the State filed on April 4, 2016.  ECF No. 23.  This Court approved Mossburg's motion for leave to amend his complaint, ECF No. 15, on March 9, 2016.  ECF Nos. 21 & 22.  The State again moved to dismiss for failure to state a claim, or in the alternative, for summary judgment.  ECF No. 25.  After receiving a grant for his motion for expansion of time to respond, Mossburg filed a response on May 16, 2016.  ECF No. 30.  The State filed a reply on June 6, 2016.  ECF No. 34.

## LEGAL STANDARDS AND ANALYSIS

### I.     Legal Standard

The State has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), failure to state a claim upon which relief could be granted.  A motion to dismiss under Rule 12(b)(6), serves "to test the sufficiency of a complaint."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citations and quotations omitted).  Despite this liberal standard, to survive a motion to dismiss, a complaint must put forth "plausible claim[s] for relief."  *Francis v.*

*Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Alternatively, the State has moved for summary judgment.  A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a properly supported motion for summary judgment is filed, the nonmoving party is required to make a sufficient showing on an essential element of that party's claim as to which that party would have the burden of proof. *Celotex*, 477 U.S. at 322–23.

## II.     **Mossburg has not pled sufficient facts to state a plausible claim for relief under Title II of the ADA**

Although the Court has reviewed the transcripts, this does not necessitate converting the motion to dismiss to one for summary judgment.  The transcripts are uncontested, publicly available, and relied on extensively by both parties, including in the Amended Complaint. *Cf. In re E.Spire Commc'ns, Inc. Sec. Litig.*, 127 F. Supp. 2d 734, 737 (D. Md. 2001) ("In deciding a motion to dismiss a securities fraud complaint, a court is entitled to rely on public documents quoted by, relied upon, incorporated by reference in, or otherwise integral to the complaint, and such reliance does not convert such a motion into one for summary judgment."). Additionally, this case is unique in that Mossburg admits that his disability makes it difficult for him to draft his pleadings.  ECF No. 30, at 2–3.  The Court finds that reading the transcripts allows the Court to better understand Mossburg's allegations.

Even with the transcripts, Mossburg's Amended Complaint does not allege facts sufficient to state a claim upon which relief may be granted.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132 (2014).  In general, a plaintiff seeking recovery for violation of Title II "must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

In *Tennessee v. Lane*, 541 U.S. 509 (2004), the Supreme Court analyzed Title II in the context of access to courts.  Because access to the courts is protected by the Due Process clause of the Fourteenth Amendment and the Confrontation clause of the Sixth Amendment, the Court held that the law imposes a duty to accommodate individuals with disabilities consistent with the principle that "a State must afford to all individuals a meaningful opportunity to be heard in its courts."  *Id.* at 532 (internal citations and quotations omitted).  Moreover, while Title II's implementation regulations do not require measures that "impose an undue financial or administrative burden . . . ordinary considerations of cost and convenience alone cannot justify a State's failure to provide individuals with meaningful access to the courts."  *Id.*  (citing 28 C.F.R. § 35.150(a)).

Undoubtedly, the State of Maryland's court system did not handle Mossburg's cases admirably. In both cases, Mossburg did not have a reader present during key hearings, despite receiving approval for his ADA requests for a reader to accommodate his disability.  The State

argues there is no claim in part because "Plaintiff's requests for accommodation were approved." ECF 25-1, at 10.   However, those approvals ring hollow because the State failed to actually provide Mossburg with the requested accommodation.   Moreover, despite numerous court orders to strike the appearance of the public defender from Mossburg's criminal case file, the public defender continued to appear "on the jacket" throughout the entirety of the case.

However, in both cases, Mossburg still had meaningful access to the courts and was able to participate in the court system notwithstanding his lack of access to a reader.   In his criminal case, Mossburg received numerous continuances to accommodate his disability and *pro se* status, and he ultimately received the lightest possible sentence.   When the court asked him if the lack of a reader would impact his ability to present his case, he stated, "Not at all."   ECF No. 25-4, at 6.   The most questionable interaction occurred when Mossburg attempted to explain his medical marijuana defense to Judge Mulford.   ECF No. 25-5, at 5.   Mossburg did not ask anyone to read any part of the Maryland Code to the judge, and Judge Mulford gave him the opportunity to explain his defense.   Had Mossburg retained the services of a public defender or other lawyer, his defense might have been stated more articulately, but Mossburg had definitively waived his right to counsel.   ECF No. 23-2, at 6.   This decision and the resulting ineffectiveness of his arguments and attempts to subpoena witnesses were separate from his disability.

Mossburg's claim against the OPD for its role in his criminal case will also be dismissed, although this does not indicate an endorsement of the way in which Mossburg was treated. According to Mossburg, and undisputed in the record, the OPD, knowing about his disability and that he did not want a public defender, had Mossburg sign a document he could not read very well.   That error was compounded when the court was unable on two occasions to strike the OPD appearance from Mossburg's file.   ECF No. 22, at 2.   According to Mossburg, the appearance

9

prevented him from seeking private counsel and being able to speak to the court staff.  *Id.* at 2.

With that said, when Judge Mulford asked Mossburg if he wanted to seek counsel or represent

himself, Mossburg said he wanted to represent himself.  ECF No. 25-3, at 5-6.  Mossburg has

also failed to explain why he could not retain private counsel while the public defender was

listed, stating only "'Private attorneys told me that I still show up represented by the Public

Defender and there is some notation on the case by Judge William C. Mulford, II preventing

anyone from granting me an extension.' This "notation" prevented private counsel from being

retained due to scheduling conflicts."  ECF No. 22, at 6.  Thus, Mossburg admits that it was

scheduling conflicts, not the public defender's appearance, that kept private attorneys from

representing him.  There is also no indication that the appearance of the public defender had any

effect on Mossburg's access to the courts during the proceedings, as he was able to obtain

postponements and explain his concerns.  The extreme inconvenience of the public defender's

appearance is unfortunate, but Mossburg has not pled, and indeed, cannot honestly plead, that the

appearance limited his access to the courts.

The claims related to his civil case will be dismissed for similar reasons.  Judge

Creighton discussed with Mossburg multiple causes of action in an attempt to salvage his case.

ECF No. 25-7.  Mossburg's Complaint characterizes the proceedings as being "forced to argue

and answer questions."  ECF No. 22, at 12.  In reality, Judge Creighton gave Mossburg every

opportunity to explain the cause of action from his complaint.  Arguing and answering questions

are part of the legal process and self-representation.  While this Court is troubled that no reader

was provided despite the fact that documents were being reviewed, the transcripts do not reveal

that Mossburg was unable to participate in the proceedings.  Indeed, he participated at great

length.  It is clear from the transcripts that Mossburg's civil case failed not because he was unable to participate, but because he was unable to articulate a cause of action.

As a final matter, Mossburg's claims of harassment in the complaint will also be dismissed.  Judge Mulford's "goo-goo ga-ga" comment referred to the slow pace of the criminal proceedings that were still in a "toddler phase."  ECF No. 25-3, at 9.  These comments were not directed at Mossburg's intelligence or disability, but rather were a description of the age and development of the case.  Likewise, Mr. Dorsey's alleged comments to Mossburg, while rude, did not rise to the level of harassment.  ECF No. 22, at 6.

## CONCLUSION

For the foregoing reasons, the State's Motion to Dismiss or in the Alternative, Motion for Summary Judgment, ECF No. 25, is GRANTED.  A separate order shall follow.


Date:  June 29, 2016                                    _____/s/_____
                                                        ROGER W. TITUS
                                                        UNITED STATES DISTRICT JUDGE